Charles Lee COOK, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–90–01022–CR to 01–90–01037–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 20, 1992.

Wesley H. Hocker, Robert A. Morrow, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson, Houston, for appellee.

1. Tex.Penal Code Ann. § 37.10(a)(2) (Vernon

Before O'CONNOR, DUGGAN and DUNN, JJ.

## OPINION

O'CONNOR, Justice.

Charles Lee Cook, appellant was tried in one proceeding under 17 indictments which charged 33 counts of tampering with governmental records.[1] A jury found him guilty of 28 counts listed in 16 indictments, and assessed punishment at seven-years confinement. Appellant brings 16 appeals, which are consolidated for consideration. We reverse and remand for retrial.

Appellant presents five points of error, contending the trial court erred: (1) in overruling appellant's motion to quash the indictments; (2) in overruling appellant's motion for new trial, which was based on the jurors' consideration of appellant's failure to testify; (3) in improperly commenting on the weight of the evidence during guilt-innocence phase of trial; (4) in denying appellant his sixth amendment right to counsel by threatening counsel with contempt; and (5) in improperly commenting on the weight of the evidence during defense counsel's closing argument.

### Fact summary

Appellant acted as a property tax consultant between 1986 and 1989 for a number of businesses in Harris County. His clients furnished balance sheets, inventories, and other financial documents. Appellant prepared annual property tax renditions, and submitted them to the Harris County Appraisal District. The State charged in the indictments that appellant knowingly submitted renditions that did not disclose all the taxable property of his clients, and that appellant supported those falsified reports with fabricated or altered business documents such as balance sheets, income tax returns, and affidavits.

The indictments were identical in form, reciting only that:

1974).

CHARLES LEE COOK, hereafter styled the Defendant, heretofore on or about [date of offense] did then and there unlawfully and with intent to defraud and harm another, knowingly make and present a record, document and thing duplicated and attached hereto, with knowledge of its falsity and with intent that it be taken as a genuine governmental document.

Attached to each charging instrument was a copy of a personal property rendition form, balance sheet, corporate income tax return, or affidavit of accounting that the State alleged was in some way false. For example, in the indictment in cause number 553,602, attached to count one was the four-page income tax return, IRS Form 1120, for J.S. Corporation; attached to count two was a one-page document filed with the Harris County Appraisal District for Beck & Masten Pontiac; attached to count three, the four-page income tax return, Form 1120, for Beck & Masten Pontiac. Nothing in the language of the count stated what line, entry, or part of the document was alleged to be falsified. Nothing on the exhibit identified what line, entry, or part of the document was alleged to be falsified.

The State's trial strategy consisted of presenting witnesses who were officers or accountants of the businesses whose property taxes were rendered by appellant. The prosecutor asked the witnesses to examine documents filed with the appraisal district and to vouch for the genuineness or establish the falseness of the evidence. Some exhibits were copies of the attachments to indictments, others were not. Each witness was asked to review particular details of exhibits relevant to the offenses. The prosecutor then brought the witness's attention to the specific line, entry, or portion of the document that was alleged to be false, and requested the witness either verify the entry or make a comparison with another document in order to demonstrate its falsity.

The State also presented expert witnesses from the Harris County Appraisal District who testified the documents filed by appellant during tax protest proceedings did not agree with the investigative findings of the agency. Those witnesses were asked to compare documents on file in the district office with those subsequently subpoenaed from property owners or seized from appellant's business offices. In each case, the prosecutor specifically called the witness's attention to certain entries or portions of the challenged documents and requested a comparison with other documents obtained from the property owners.

## 1. The motion to quash the indictments

In his first point of error, appellant contends the trial court erred in overruling his motion to quash the indictments. He claims it was impossible to prepare a defense when the only notice of the individual offenses he received was the identical allegation made in each indictment, coupled with a complete document attached to each charging instrument.

Generally, an indictment that tracks the statutory language is legally sufficient and the State need not allege facts that are merely evidentiary. *Bynum v. State*, 767 S.W.2d 769, 778 (Tex.Crim.App.1989). If, however, it is the manner or means by which an act is done that makes an otherwise innocent act a criminal offense, an indictment that merely tracks the language of the statute may not be sufficient. *Ex parte Holbrook*, 609 S.W.2d 541, 543 (Tex. Crim.App.1980); *Posey v. State*, 545 S.W.2d 162, 163 (Tex.Crim.App.1977). In such a case, the State must allege the facts which make the act a criminal offense. *Holbrook*, 609 S.W.2d at 543.

An indictment must adequately inform the defendant of the charges levied against him. *Labelle v. State*, 720 S.W.2d 101, 107 (Tex.Crim.App.1986). This requirement is imposed for two reasons. First, the Texas Constitution guarantees a criminally accused the "right to demand the nature and cause of the accusation against him...." TEX. CONST. art. I, § 10; *Labelle*, 720 S.W.2d at 107. As the Court of Criminal Appeals said in *Labelle*:

The right to be informed of the nature and cause of the accusation against [the

defendant] is a fundamental guarantee conferred upon the accused in a criminal prosecution, and enables him to learn in advance of the trial and with reasonable certainty with what he is being charged, so that he can properly prepare his defense. Thus a constitutional test is here required for a valid indictment or information, and the elements of the offense and *every fact or circumstance necessary to complete description thereof should be alleged therein....*

(Emphasis added). *Id.* Second, the Code of Criminal Procedure requires the indictment inform the defendant of the charges against him. *Id.* The Court of Criminal Appeals has held:

Although challenge to an accusation for failure to give adequate notice on which to prepare a defense must be asserted in a timely fashion, when properly asserted with adequate statement of the manner in which notice is deficient, fundamental constitutional protections are invoked. Because of the fundamental notions of fairness that require adequate notice of the nature of the charges against the accused in our system of justice, *a timely claim of inadequate notice requires careful consideration. This calls for examination of the criminal accusation from the perspective of the accused,* as contrasted to the measurement of its allegations against the statute that is the test for a claim that no offense is alleged.

*Drumm v. State,* 560 S.W.2d 944, 946–47 (Tex.Crim.App.1977) (emphasis added).

A motion to quash should be granted where the descriptive language about the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he is charged with committing, and the motion will be allowed if the facts sought are essential to give notice. *Bynum,* 767 S.W.2d at 778–79. A defendant may use a motion to quash to challenge the State's failure to give proper notice of the precise crime with which it charges the defendant. *See Amaya v. State,* 551 S.W.2d 385, 387 (Tex.Crim.App. 1977). When such a deficiency is timely

brought to the court's attention, the State *must* respond by amending the charging instrument to include a specific allegation of what the State will rely on for conviction. *Id.; see also* TEX.CODE CRIM.PROC. ANN. art. 28.09–28.11. The offense should be charged in plain and intelligible words, with such certainty that a presumptively innocent person such as the accused will know what he will be called upon to defend against, and to enable him to plead any resulting judgment to bar further prosecution for the same offense. *Swabado v. State,* 597 S.W.2d 361, 363 (Tex.Crim.App. 1980).

The defendant in *Swabado* was charged with falsifying reports for the Department of Public Welfare by recording the employment of vocational nurses who had not actually worked at a nursing home. *Id.* at 362–64. The indictment did not state the names of nurses who were falsely reported as employees and the dates on which they were alleged to have worked. *Id.* at 364. The Court of Criminal Appeals held the indictment was deficient because it did not identify the governmental records on which the indictment was based. *Id.* at 363.

The defendant in *Amaya* was charged with welfare fraud by obtaining assistance to which she was not entitled from the State of Texas Department of Public Welfare by false statements. *Amaya,* 551 S.W.2d at 386. The Court of Criminal Appeals held the indictment was deficient because it did not identify the specific false statement the State alleged the defendant made. *Id.* at 387.

Other cases where the State should have, after objection, provided specific allegations of manner or means used in the commission of the offense are: *Castillo v. State,* 689 S.W.2d 443, 446 (Tex.Crim.App. 1985) (in an arson case, the State should have alleged the manner and means of starting the fire); *Doyle v. State,* 661 S.W.2d 726, 730 (Tex.Crim.App.1984) (in a retaliation case, the State should have alleged the manner and means to communicate the threat); *Miller v. State,* 647 S.W.2d 266, 267 (Tex.Crim.App.1983) (in a criminal mischief case, the State should

have alleged the manner and means of torturing the animal); *Jeffers v. State,* 646 S.W.2d 185, 188 (Tex.Crim.App.1983) (in a gambling case, the State should have alleged the manner and means the defendant used to receive bets); *Cruise v. State,* 587 S.W.2d 403, 405 (Tex.Crim.App.1979) (in an aggravated robbery case, the State should have alleged the manner and means of causing bodily injury); *Haecker v. State,* 571 S.W.2d 920, 921–22 (Tex.Crim.App. 1978) (in a cruelty to animals case, the State should have specified the manner of torture).

In the case before us, appellant contends the documents attached as exhibits to the indictments did not give him fair notice as to which entries the State alleged were falsified. Of the hundreds of entries contained in the 33 documents attached to the indictments, appellant was forced to speculate which particular entry might form the basis of the prosecutor's case. Like the defendants in *Swabado* and *Amaya,* the appellant was not fairly notified of the particular wrong with which he was charged. An accused must be given sufficient information upon which he may prepare his defense, and this information must come from the face of the indictment. Looking elsewhere is not required by law. *Swabado,* 597 S.W.2d at 364. In *Terry v. State,* 471 S.W.2d 848, 852 (Tex.Crim.App. 1971), the court said

> The indictment must allege on its face the facts necessary (1) to show that the offense was committed, (2) to bar a sub-

sequent prosecution for the same offense, and (3) to give the defendant notice of precisely what he is charged with.

Upon the appellant's demand by motion to quash, the State was required to inform appellant of the precise facts in the documents that it alleged were false entries. *See Swabado,* 597 S.W.2d at 364. To afford a defendant sufficient notice of an offense under section 37.10, the charging instrument should allege the essential elements of the offense and identify the false entry.

We do not end our analysis with a determination that the indictment was deficient for failure to give the defendant adequate notice to prepare his defense. The case of *Adams v. State,* 707 S.W.2d 900, 903 (Tex.Crim.App.1986), instructs us that we must decide whether a defendant had notice adequate to prepare his defense. In reaching the answer, we must answer three questions: Did the charging instrument fail to convey some requisite item of notice? If not, we overrule the point. If so, we go to the second question: In the context of the case, did the defect have an impact on defendant's ability to prepare his defense? If not, we overrule the point. *Id.* If so, we go to the third question: How great was the impact on defendant's ability to prepare his defense? If the impact was insignificant, we overrule the point. If the impact was substantial, we sustain the point and reverse. *Id.*

Did the indictment fail to convey some requisite item of notice?
- No
- Yes
  - Did lack of sufficient notice impact defendant's ability to prepare his defense?
    - No
    - Yes
      - How great was the impact on Defendant's rights to prepare his defense?
        - Insignificant
        - Substantial → Reverse
- No / Insignificant → Affirm

---

Applying the tests from *Adams:* Did the charging instrument fail to convey some requisite item of notice? Yes. In the context of the case, did the defect have an impact on defendant's ability to prepare his defense? Yes. How great was the impact on defendant's ability to prepare his defense? This last inquiry requires us to review the entire record.

Recall that the trial involved 17 indictments which charged 33 counts of presenting false documents to the government. The State called a total of 15 witnesses. Some took the witness stand several times to testify on different charges. The prosecutor was well prepared for detailed and specific examination of each witness, and introduced 100 exhibits. In each case, the prosecutor drew the witness' attention to a specific matter in the exhibit that the prosecutor, for the first time at trial, identified as being false. In some cases, the evidence showed that the entire document was false and was probably created by the appellant; in some cases, a document with a false entry contained a false signature; in other cases, certain figures on specific lines on the forms were false.

Defense counsel claimed he was not able to adequately prepare because of the vagueness of the indictments. During the hearing on the motion to quash, he argued that the charging instruments did not state in what manner the documents were false, if they were false, and how they were made false.

Considering the full record in this case, we hold the impact of the defective indictment was substantial. Despite well-argued pretrial motions, appellant's counsel was unable to learn what entries the State alleged were false.

We sustain point of error one.

If we considered and sustained appellant's other points of error, appellant would

not be entitled to a rendition, merely a remand. Thus, we do not find it necessary to reach the other points of error. TEX. R.APP.P. 90(a); *Hartney v. State*, 823 S.W.2d 398 (Tex.App.—Houston [1st Dist.], 1992, n.w.h.) We reverse and remand these cases for retrial.